IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Nicholas Larry-Kyle Wood,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:19cv1000 (TSE/IDD)<br>) |
| Dr. Andui Jamaludeen,<br>    Defendant.[1] | )<br>)<br>) |

MEMORANDUM OPINION

Nicholas Larry-Kyle Wood ("Plaintiff" or "Wood"), a local Virginia inmate proceeding pro se, filed a civil-rights suit under 42 U.S.C. § 1983, alleging that he received constitutionally inadequate medical care at the Virginia Beach Correctional Center ("VBCC"), in violation of his Eighth Amendment rights. [Dkt. No. 1]. In his amended complaint, Wood alleges that he injured his shoulder on March 26, 2019 while incarcerated and that defendant Dr. Jamaludeen was deliberately indifferent to his serious medical need. [Dkt. No. 8 at 7-8]. Wood alleges Dr. Jamaludeen delayed his treatment from March 28, 2019 until July 15, 2019 and then again from December 30, 2019 through April 2, 2020. Wood also alleges he was denied grievance forms. [Id. at 5, 9, 14]. He seeks monetary damages in the amount of $300,000. [Id. at 16]. Dr. Jamaludeen has filed a motion for summary judgment, with supporting briefs and exhibits, asserting Wood failed to exhaust his administrative remedies and that the claim has no merit. [Dkt. Nos. 20-21]. Wood has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Accordingly, this matter is now ripe for

---

[1] Defendant Dr. Jamaludeen's last name is misspelled on the docket sheet – "Jamaiudeen." The Clerk is directed to amend the docket sheet to reflect the correct spelling of his last name, "Jamaludeen."

disposition. For the reasons that follow, defendant's motion for summary judgment shall be granted, and the complaint will be dismissed.

## I. Facts

Wood alleges that he injured his shoulder on March 26, 2019 while exercising. He requested medical attention and was x-rayed the following day. [Dkt. Nos. 8 at 4; 21-1 at 3]. Wood requested an increase in his pain medication, but it could not be authorized because Wood was on pain medication for a previous medical issue, carpal tunnel syndrome. [Id. at 3]. The radiologist's report stated that there were "no radiographic abnormalities of the right shoulder," did not identify any abnormality in Wood's collarbone, and noted that the soft tissues were "unremarkable." [Dkt. No. 21-2 at 9, 12]. Wood alleges he requested an MRI, but there is no record of a request and there was no basis for requesting one at that point. [Id.].

Wood alleges he has suffered undue pain for months and that Dr. Jamaludeen ignored and delayed providing him proper medical care. [Dkt. No. 8 at 4-5]. Between March 28, 2019 and May 7, 2019, Wood put in several slips to see medical personnel about several matters other than his shoulder pain. Wood did not request to see someone about shoulder pain again until May 7, 2019. Wood saw Physician Assistant ("PA") Cartwright and requested an increase in his pain medication. He submitted another slip to medical on May 11, 2019 requesting to see the doctor about his shoulder. [Dkt. No. 21-1 at 4].

Wood submitted several slips to see the medical unit between May 11, 2019 and June 22, 2019. On June 22, 2019, he saw PA Cartwright about an infection on his neck but did not complain about his shoulder at that time. On July 5, 2019 he requested suppositories and on July 10, 2019 reported he had hemorrhoids. [Id. at 5].

2

Wood next sought an increase in pain medication for his shoulder on July 14, 2019 and on July 15, 2019, PA Cartwright saw Wood in his cell block. Wood reported to PA Cartwright that he had injured his shoulder in a fight "a few months ago," and after examining Wood, she concluded he had "probable rotator cuff tendinitis vs tear" and planned to send to him out for an orthopedic evaluation. [Id. at 6]. PA Cartwright discussed her examination of Wood with Dr. Jamaludeen and he "determined that conservative management would be a better approach at this time," and Wood was prescribed Naprosyn for pain. [Id.].

On August 26, 2019, PA Cartwright examined Wood's shoulder. Although there was "good range of motion," she noted some tenderness. PA Cartwright determined that cortisone shots would be Wood's next course of treatment. Wood received a cortisone shot on September 9, 2019. [Id. at 6-7].

On September 27, 2019, Wood submitted a medical slip stating that his shoulder pain had returned. Dr. Jamaludeen saw Wood on October 11, 2019, which was Dr. Jamaludeen' first direct contact with Wood. On October 11, 2019, given Wood's persistent complaints under conservative management, Dr. Jamaludeen submitted the paperwork for approval of an offsite visit and Wood was seen by an orthopedist on October 31, 2019. The orthopedist ordered an MRI, which was done on November 21, 2019. [Id. at 7]. On December 16, 2019, Dr. Jamaludeen told Wood he had a torn labrum (revealed non-displaced, less serious than displaced, labral tears), and referred Wood back to the orthopedist. The orthopedist recommended a conservative management approach of physical therapy.

On January 23, 2020, Wood told Dr. Jamaludeen he was unhappy with the conservative approach of the orthopedist and wanted a second opinion. Dr. Jamaludeen looked into obtaining a second opinion while he also worked on obtaining the necessary approval for the physical

therapy. Wood's physical therapy began on April 2, 2020, and Wood was quarantined after his off-site appointment on April 2, 2020. On April 6, 2020, Dr. Jamaludeen explained to Wood that COVID-19 would have an impact on his outside treatment, due to its non-urgent nature. Non-essential, non-urgent appointments were put on hold during the COVID-19 pandemic for the health and safety of all inmates at VBCC and Wood's shoulder injury could be treated symptomatically in-house during the interim period. [Id. at 8].

Wood was next seen by PA Cartwright on April 27, 2020, and she increased his pain medication. Wood submitted another medical slip but that one was denied because Wood had been seen within the previous two weeks. Wood was not seen again and was released on May 21, 2020. [Id. at 9].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, thus, bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co.,

125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted); Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010) (unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion), aff'd, 412 F. App'x 583 (4th Cir. 2011); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").

Finally, while district courts must view pro se complaints with a "special judicial solicitude," that requirement "does not transform the court into an advocate." Weller v. Department of Social Services, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Exhaustion

Defendant Dr. Jamaludeen has moved for summary judgment asserting that Wood failed to exhaust his administrative remedies with regard to this alleged constitutional violation.[2] In his

---

[2] VBCC's grievance process required informal attempts to resolve issues before resulting to the formal grievance process. VBCC inmates were required to fulfill three prerequisites prior to requesting a grievance. First, Wood had to "demonstrate that [he had] made a good faith effort to resolve the[] issue through general means of communication with staff, which is done using "an Inmate Request Form or verbally." [Dkt. No. 21-5 at 2]. After submitting a Request Form, Wood had to "allow for five **(5)** working days for [a] staff response before requesting a Grievance Form." [Id.] (emphasis in original). Lastly, if Wood felt his issue had not been resolved, he could "request an Inmate Grievance Form from the Grievance Coordinator," which Wood had to fill out and return "to the Grievance Coordinator within **24** hours." [Id.] (emphasis in original).

5

amended complaint, Wood alleged that on two occasion (May 21 and May 28, 2019) he had requested grievance forms but that he had not been provided any forms. [Dkt. No. 8 at 5]. Defendant submitted an affidavit from a VBCC official admitting that Wood made the two requests but explained that Wood did not satisfy the prerequisites of VBCC's grievance procedures. Wood had "to first submit a sick call slip to the Medical Department to try to resolve the issue." [Dkt. No. 21-4 at 3]. The official avers that Wood never submitted a grievance regarding his shoulder, and that Wood did not submit a request for a grievance form in accordance with the procedures outlined in the VBCC grievance procedures. [Id.]. Wood has not responded.

> Under the Prison Litigation Reform Act (the Act), 42 U.S.C. § 1997e(a), an inmate is required to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court. The Act's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory, and courts lack the authority to waive that requirement. See id. at 524.

Graham v. Gentry, 413 Fed. Appx. 660, 662-663 (4th Cir. 2011). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 219. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).

"[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (quoting Woodford, 548 U.S. at 88). An inmate does not exhaust the

6

grievance process if he fails to file an appeal in accordance with jail policy and procedure. Adams v. Sw. Va. Reg'l Jail, C.A. No. 7:12cv00462, 2014 U.S. Dist. LEXIS 106195, *10 (W.D. Va. Aug. 4, 2014), aff'd sub nom. Adams v. Ofought, 592 F. App'x 225 (4th Cir. 2015). The PLRA requires a prisoner to exhaust his available administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a) (2012); Ngo, 548 U.S. at 83-85. "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

"Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1862 (2016); Xiteng Liu v. United States Citizenship & Immigration Servs., 317 Fed. Appx. 361, 362 (4th Cir. 2009) (quoting Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)). ("[a] court may 'not read futility or other exceptions into [the PLRA's] statutory exhaustion requirements where Congress has provided otherwise.'").[3] Wood presents no evidence that a grievance was unavailable to him.[4] Accordingly, his assertion that the defendant was

---

[3] Also, worth noting, plaintiff filed his complaint while still incarcerated in August 2019. That plaintiff was later released does not exempt plaintiff from complying with the PLRA. See, e.g., Richardson v. Sisk, No. 3:07CV488, 2008 U.S. Dist. LEXIS 34663, *2-4 (E.D. Va. Apr. 28, 2008) (Payne, J.), aff'd, 300 Fed. Appx. 216 (4th Cir. 2008); Chase v. Peay, 286 F. Supp. 2d 523, 527 (D. Md. 2003), aff'd, 98 F. App'x 253 (4th Cir. 2004).

[4] Wood does not rely on the exceptions in Ross, and the Court finds that the three exceptions in Ross do not apply. 136 S. Ct. at 1859-60. First, the grievance process was available to Wood. Second, the grievance procedure is straightforward. Lastly, there is no evidence that the jail personnel prevented Wood from using the grievance procedure or from filing an appeal. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it

deliberately indifferent to a serious medical need must be dismissed because he failed to exhaust his administrative remedies. Moreover, even if Wood had properly exhausted his claim, the claim has no merit.

### IV. Deliberate Indifference

To state an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle, 429 U.S. at 105; Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, Wood must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). A serious medical need is one that poses a substantial risk of serious injury to an inmate's health and safety. Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001). Second, he must allege deliberate indifference to that serious medical need.

Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D.

---

impossible for them to file grievances.").

Va. 1990). The treatment an inmate receives from a health care provider constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. A defendant must act with either actual intent or reckless disregard, meaning that the defendant disregarded "a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52.

For purposes of this motion, the Court will assume that Wood had a serious medical injury. The record, however, establishes that Wood was seen regularly and that several treatment regimens were tried before Wood was sent to an orthopedist in October 2019. Wood's initial evaluation and x-ray did not indicate any abnormality — no fractures, the soft tissues were "unremarkable," and the radiologist did not find any abnormalities. [Dkt. No. 21-2 at 12]. Wood next complained about his shoulder on May 4, 2019, was seen by PA Cartwright on May 7, 2019, and he was given Advil for pain. [Id. at 13-14]. Wood's request to see the doctor on May 11, 2019 was denied because he had seen PA Cartwright on May 7, 2019. [Id.]. On July 15, 2019, PA Cartwright examined Wood and discussed with Dr. Jamaludeen whether Wood should be referred to an orthopedist. Dr. Jamaludeen decided to follow a conservative approach and prescribed Naprosyn.

Wood was next seen regarding his shoulder on August 26, 2019 by PA Cartwright. She examined Wood and determined that a cortisone shot would be the next treatment regimen. The shot was administered on September 9, 2019. Wood submitted a medical slip on September 27, 2019, stating that his shoulder pain had returned and on October 11, 2019, Dr. Jamaludeen saw Wood and submitted the paperwork for approval of an offsite visit. Wood was seen by an orthopedist on October 31, 2019. The orthopedist ordered an MRI, which was done on

November 21, 2019. Dr. Jamaludeen explained the injury to Wood on December 16, 2019 (torn labrum) and referred Wood back to the orthopedist. The orthopedist recommended a conservative management approach of physical therapy.

On January 23, 2020, Wood told Dr. Jamaludeen he was unhappy with the conservative approach ordered by the orthopedist and wanted a second opinion. Dr. Jamaludeen looked into obtaining a second opinion while he also worked on obtaining the necessary approval for the physical therapy. Wood's physical therapy began on April 2, 2020, and Wood was quarantined after his off-site appointment on April 2, 2020. On April 6, 2020, Dr. Jamaludeen explained to Wood that COVID-19 would have an impact on his outside treatment, due to its non-urgent nature. Non-essential, non-urgent appointments were put on hold during the COVID-19 pandemic for the health and safety of all inmates at VBCC and Wood's shoulder injury could be treated symptomatically in-house during the interim period. PA Cartwright saw Wood on April 27, 2020 and increased his pain medication. Wood was not seen again and was released on May 21, 2020.

The medical care provided assessed the injury in March 2019 and continued with pain medication, increases of medication, cortisone shots, referral to an orthopedist, the results of an MRI, and physical therapy. Where a doctor "orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." Self v. Crum, 439 F.3d 1227, 1232-33 (10th Cir. 2006); see, e.g., Gray v. Kang Lee, No. 9:13-CV-258, 2015 U.S. Dist. LEXIS 49208, at *3 (N.D.N.Y. Apr. 15, 2015) (finding prisoner could not satisfy objective requirement where he was frequently treated, prescribed pain medication, tested with an x-ray and MRI, and referred to an orthopedic specialist).

The facts of this case demonstrate Wood's disagreement with the course of treatment used by the medical providers at VBCC, as well as the off-site orthopedist, but they do not establish deliberate indifference to a serious medical need. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Where, as here, medical care was provided to Wood, allegations that such care was inadequate at most state a claim of medical malpractice in the absence of exceptional circumstances. Id. "It is not the function of this Court to second-guess the good faith medical judgments made by physicians or their staff concerning the treatment of inmates." Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990) (citing Russell v. Sheffer, 528 F.2d 318, 319 (1975)).

## V. Conclusion

For the reasons set forth above defendant's motion for summary judgment [Dkt. No. 20] must be granted. An appropriate order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and the plaintiff, who is proceeding pro se in this matter.

Entered this 8th day of January 2021.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge